**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**MARCO SANCHEZ RICE**                                                                 **PLAINTIFF**

**V.**                                                            **NO. 4:15-CV-00087-DMB-JMV**

**LT. CLARISSA WILLIAMS; MS. T. ORR,**
Case Manager of 26-A; **VERLENA FLAGG,**
Associate Warden Unit 30; **LT. WREN;**
**OFFICER THELMA THOMPSON; OFFICER**
**KOREY CLARK; OFFICER APRIL MOORE;**
**DAVID PETRIE,** Legal Claims Adjudicator;
**MS. WASHINGTON,** Case Manager of 26-A;
and **SUPERINTENDENT LEE**                                                           **DEFENDANTS**

## ORDER ADOPTING REPORT AND RECOMMENDATION

This § 1983 action is before the Court for consideration of the Report and Recommendation filed by United States Magistrate Judge Jane M. Virden, and Marco Sanchez Rice's objections thereto. The Court finds that Rice's objections are without merit and that the Report and Recommendation should be approved and adopted as the opinion of the Court. In addition, as Rice has made clear that he intended the sole remaining defendant, Case Manager Tori Orr, to be a witness, rather than a party, she will be dismissed from this case. Thus, the case will be dismissed for Rice's failure to state a claim upon which relief could be granted.

**I**
**Procedural History**

Rice filed this § 1983 action on July 6, 2015, against Clarissa Williams, Thelma Thompson, Korey Clark, "Lieutenant" Alexander, "Lt Ren or Wren," April Moore, Verlena Flagg, David Petrie, "Ms. Washington," Superintendent Lee" and "Ms. T. Orr." Doc. #1. On September 14, 2015, United States Magistrate Judge Jane M. Virden held a *Spears* hearing on Rice's complaint. Doc. #11. On September 17, 2015, Rice filed a motion to appoint counsel, Doc. #12, which Judge Virden denied on October 20, 2015, Doc. #14.

Tori Orr answered Rice's complaint on December 11, 2015. Doc. #17. Four days later, Judge Virden issued a Report and Recommendation ("R&R") regarding Rice's claims. Doc. #18. In the R&R, Judge Virden recommended that: (1) Thompson, Clark, and Moore be dismissed from the action because "[a]t the *Spears* hearing, Mr. Rice stated that [they] are actually witnesses, rather than defendants;" (2) the Court interpret claims brought against Williams, Warden, Flagg, Wren, Orr, Alexander, Petrie, and Lee as claims for denial of due process and that such claims be dismissed for failure to state a claim under *Sandin v. Conner*, 515 U.S. 472 (1995); and (3) the Court interpret a claim brought specifically against Orr as a claim for retaliation and that such claim be allowed to proceed. *Id.* at 3–5.

On December 29, 2015, Rice filed objections to the R&R. Doc. #22. On January 11, 2016, Rice filed an "Amended Pleadings" and a letter to Judge Virden, the latter of which the Court construes as containing additional objections. Doc. #24. Finally, on February 29, 2016, Rice filed a "supplement" to his objections. Doc. #29.

## II
## Standard of Review

Where objections to a report and recommendation have been filed, a court must conduct a "de novo review of those portions of the ... report and recommendation to which the Defendants specifically raised objections. With respect to those portions of the report and recommendation to which no objections were raised, the Court need only satisfy itself that there is no plain error on the face of the record." *Gauthier v. Union Pac. R.R. Co.*, 644 F.Supp.2d 824, 828 (E.D. Tex. 2009) (citing *Douglass v. United Serv. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996)).

## III
## Analysis

As explained above, Rice filed three documents constituting his objections to the R&R. These documents contain many objections, most of which touch on the form of the R&R, rather

than its substance.

## A. First Document ("Objections to Allegations")

Rice's first filing sets forth three classes of objections: (1) "Objections to Allegations;" (2) "Objections to people named as defendants who are actually witnesses;" and (3) "Witnesses Needed and why Also my OBJECTION to the conclusion as a whole." Doc. #22.

### 1. "Objections to Allegations"

#### a. *Objection #1*

In his first objection, Rice argues that the R&R erred in stating that Rice filed a "slew" of grievances against Orr when in fact he only filed a single grievance. Even one grievance against Orr would be enough to support a claim of retaliation. Accordingly, the difference in the number of grievances does not affect the ultimate recommendation that the retaliation claim proceed. As such, this objection is overruled.

#### b. *Objection #2*

Rice next objects to the R&R's statement that Rice "believed" he had accrued 20 days of Meritorious Earned Time which should have been applied to reduce his sentence. Rice alleges that he actually did accrue that earned time. The accrual of earned time had no bearing on the ultimate recommendation. Accordingly, the objection is overruled.

#### c. *Objection #3*

In his third objection, as to the retaliation claim, Rice objects to the R&R's statement that "Ms. Williams told Rice she did not believe he was guilty of these Rule Violation Reports, but in this situation, she would give more credence to staff statements." He states that "Ms. Williams found me not guilty on all six Rule Violation Reports," and that she told him she was coerced by Orr (who was above her in the chain of command) into changing the ruling to "guilty" on each Rule Violation Report. The Magistrate Judge recommended that the retaliation claim go forward;

3

thus, Rice will have the opportunity to present evidence and testimony at a trial or evidentiary hearing. As such, this objection is without merit and is overruled.

*d. Objection #4*

In his fourth objection, Rice takes issue with the Magistrate Judge's statement that his punishment was "loss of privileges for 15 days;" he states that he meant in his pleadings that he lost 15 days of privileges for each Rule Violation Report, which is a total of 90 days (120 days if one includes the two later Rule Violation Reports. However, the number of days of lost privileges does not change the analysis under the rule set forth in *Sandin v. Conner*, 515 U.S. 472 (1995), the case on which the R&R relied. This objection is without merit and is overruled.

*e. Objection #5*

In his fifth objection, Rice takes issue with the Magistrate Judge's decision to conduct the *Spears* hearing through video conference, rather than in person. He believes that he could have made his claims and issues clearer in person. The purpose of a *Spears* hearing to permit the plaintiff to expound upon his claims and issues so that the court can handle the case more efficiently and expeditiously. *Spears v. McCotter,* 766 F.2d 179 (5th Cir. 1985). A plaintiff has no right to a *Spears* hearing, and the court may conduct such a hearing in the most efficient manner. *See Jones v. Univ. of Tex. Med. Branch Hosp. Galveston*, 236 F. App'x 931, 933 (5th Cir. 2007) ("The district court here used a questionnaire instead of a Spears hearing, and Jones fails to show the district court's choice of this method prevented him from adequately presenting his claims."); *see also Burley v. Leal,* No. 2:14-CV-43, 2014 WL 2815271, at *2 (S.D. Tex. June 23, 2014) ("[G]iven that magistrate judges are afforded discretion to determine whether or not to conduct a Spears hearing at all, the Magistrate Judge in this case acted within his discretion in deciding to conduct the Spears hearing in the manner he deemed most appropriate.").

In this case, for cost and security reasons, the Magistrate Judge chose to conduct the

hearing via video conference. Rice thus had two opportunities to present and clarify his claims—in his complaint, and at the *Spears* hearing. Then, once he reviewed the Magistrate Judge's Report and Recommendation, Rice submitted three other documents setting forth many objections in a further attempt to make his claims clearer. He has now had *five* opportunities to present and clarify his claims, including one through live video conference. This objection is thus without merit and is overruled.

### f. Objection #6

In his sixth objection, Rice takes issue with the Magistrate Judge's statement that Orr conducted urinalysis testing on all inmates in Unit 26-A, and did so in retaliation against Rice for filing a grievance against her. Rice alleges, instead, that Orr only conducted urinalysis testing on those inmates who filed grievances against her, "hoping she could blame her reports on us (inmates) being on drugs," though, according to Rice, he "passed" his drug screen. As above, the Magistrate Judge recommended that the retaliation claim proceed, and the opportunity to present evidence and testimony to support this claim would occur during the fact-finding phase of the case. The objection regarding selection of inmates for urinalysis is, therefore, overruled.

### g. Objection #7

In his seventh objection, which involves his retaliation claim, Rice states that the Magistrate Judge was incorrect in saying that, "[Rice] never even signed six of the Rule Violation Reports because he never saw them; they were made up." He states, instead, that he did sign them, but they were later changed from "not guilty" to "guilty." On the other hand, in his complaint Rice states, "I didn't sign these R.V.R.s cause they never existed or was delivered." After reviewing Rice's objections, it appears as though that statement in his complaint may have referred only to the last two of the eight Rule Violation Reports he received. Though Rice appears to quibble with the sequence of events set forth in the Report and Recommendation, the

5

Magistrate Judge recommended that the retaliation claim proceed. As such, it is too early in the proceedings for Rice to present evidence and make his arguments regarding the Rule Violation Reports. This objection is overruled.

*h. Objection #8*

In his eighth objection, Rice states that, as to the retaliation claim, the Magistrate Judge was incorrect in saying that, "The dates don't match up; for example, some have the 24-hour notice of hearing listed as several days *after* the hearing." Rice acknowledges that the out-of-sequence dates "may be questionable" but states that he was trying to make a different argument. According to Rice, he was trying to argue that the original dates for hearings on the Rule Violation Reports (November 22, 2014, and November 26, 2014) were pushed back to January 13, 2015, and January 14, 2015. Yet, on the Rule Violation Reports, someone had written that the hearings would take place 35 to 36 days in the future (which corresponded to the new, later, dates in January). Thus, Rice asks, "How could someone, at the time the Rule Violation Report was written, possibly predict that the hearing dates would be moved, and know the exact dates the hearings would actually be held?" As Rice puts it, that person would have to be psychic. He also argues that the choice of six Rule Violation Reports was not arbitrary; instead, the person chose that number because it triggers placement in "C" custody for an entire year. The Magistrate Judge recommended that this claim move forward, and Rice's argument relates only to testimony and evidence he could offer at trial. This objection therefore is without merit and is overruled.

*i. Objection #9*

In his ninth objection, Rice takes issue with the Magistrate Judge's statement that he was housed at the Marshall County Correctional Facility with a dangerous gang member who was caught with a knife. Rice states that he was actually housed with the dangerous inmate during his placement in C-custody at Unit 29-I of the Mississippi State Penitentiary and was then moved to

6

the Marshall County Correctional Facility. The Court notes, however, that Rice argues the Magistrate Judge did not address his claim that the defendants were deliberately indifferent to his health or safety during the time he was housed with a gang member, and he sought protective custody even after he was transferred to the Marshall County Correctional Facility. The Court interprets this as an argument that the R&R should have considered a claim for failure to protect.

"The Eighth Amendment affords prisoners protection against injury at the hands of other inmates." *Johnson v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986) (citations omitted). Deliberate indifference "[is] the proper standard to apply in the context of convicted prisoners who claim[] denial of medical care or the failure to protect." *Grabowski v. Jackson Cty. Pub. Def. Office*, 47 F.3d 1386, 1396 (5th Cir. 1995). A prisoner plaintiff cannot show that a prison official showed deliberate indifference unless he can show that "the official [knew] of and disregard[ed] an excessive risk to inmate health or safety;" indeed, the official must have been aware of facts giving rise to an inference that a substantial risk of serious harm existed – and he must have drawn that inference. *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). An inmate pursuing a claim for failure to protect may prove his claim by showing that the defendants knew of a specific threat to him but failed to take measures to protect him from it. *Id.* at 843.

Even in the absence of a specific threat, an inmate may prove a claim of failure to protect if he can show that he was placed in a prison environment "where terror reigns." *Jones v. Diamond*, 636 F.2d 1364 (5th Cir. 1981), *overruled on other grounds by International Woodworkers of America, AFL-CIO and its Local No. 5-376 v. Champion Intern. Corp.*, 790 F.2d 1174 (5th Cir. 1986). This situation arises in a jail or prison where officials permit violent offenders to hold sway over part or all of the facility – creating "a pervasive risk of harm and a failure to take reasonable steps to prevent the known risk." *Stokes v. Delcambre,* 710 F.2d 1120 (5th Cir. 1983) (sheriff housed college students arrested on a non-violent misdemeanor charge with a dozen inmates charged with violent felonies –

leading to the students' severe beating and rape). Under this standard, "it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." *Farmer*, 511 U.S. at 843.

In this case, Rice has not alleged that he suffered physical injury from his lengthy placement in Unit 29-I near an alleged gang member – or as a result of his transfer to different "C" custody housing at the Marshall County Correctional Facility. Indeed, he has not alleged that he was attacked. Though he alleged that he repeatedly asked for protective custody, but was denied, he has not alleged that prison officials actually had knowledge, other than the information contained in his protective custody requests, that the situation posed a danger to Rice or others. In addition, Rice has not alleged that "terror reigns" in Unit 29-I, only that "gang members" are housed there and had access to him. Consequently, his ninth objection is overruled.[1]

### 2. "Objections to People Named as Defendants who are Actually Witnesses

Rice's next objection reads in full:

> I object to removing anyone except MS. ORR. What do people think I am stupid? Let me explain "RIGHT" now!!! MS. ORR is an indirect participant, and a direct participant but mostly indirect. Explanation = MS.ORR is the person sitting in the chair at the chess table. The pieces she was playing with on the chess board were April Moore (officer) April Moore [sic], she was the first to write me an [sic] Rules Violation Report she is on documents due to this case and holds knowledge to what happened what I'm trying to show the court, therefore making her a direct participant which makes her evidence and involved in this case, so is Thelma Thompson a direct participant she is needed for the facts and the truth to be shown which is my right.

Doc. #22 at 5.

At his *Spears* hearing, Rice made clear that he intended Moore, Thompson and Clark to be witnesses, not defendants. It appears he now wishes to proceed with a retaliation claim against

---

[1] To the extent Rice raises this objection regarding his allegations of retaliation; that claim will likewise be dismissed and the objection overruled.

8

defendants Moore and Thompson but not Clark or Orr.

In order to prove a claim of retaliation, a plaintiff must invoke "a specific constitutional right," show the defendant's intent to retaliate against the plaintiff for his or her exercise of that right, a retaliatory adverse act, and causation, *i.e.*, "but for the retaliatory motive the complained of incident . . . would not have occurred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995) (citations omitted), *cert. denied*, 516 U.S. 1084 (1996). Rice has not alleged that Moore or Thompson acted with a retaliatory motive. Rather, as quoted above, Rice believes they were pawns of the person with the retaliatory motive (Orr). Thus, because Rice has not alleged that the remaining defendants had a motive to retaliate against him, his retaliation allegations against Moore and Thompson (to the extent such claims exist) fail to state a claim upon which relief could be granted. Accordingly, the R&R did not err in recommending dismissal of these defendants.

### 3. "Denial of Due Process During Disciplinary Proceedings"

Rice also argues that the Supreme Court's ruling in *Sandin* applies only to prisoners who actually attended disciplinary hearings. Rice contends that, because his punishment was imposed despite initially being found not guilty of the six infractions, *Sandin* does not apply. *Sandin* set forth the inquiry for determining whether a plaintiff suffered the deprivation of a constitutionally protected liberty interest. This inquiry is not dependent on the nature of due process provided. Accordingly, Rice's objection in this regard is overruled.

In addition, Rice insists that Williams, Flagg, Wren, Petrie, Warden Sonja Stanciel, and Superintendent Lee were all "direct participants" in the events surrounding the allegations of retaliation. He alleges that, "[t]hese people are not just 'participants' they are 'evidence' that pertain[s] [solely] to this case." It appears Rice wishes these people to attend a trial or hearing so that during their testimony they would "dismantle each other by telling the truth on each other to keep [their] jobs." In other words, he would like these people to impeach each other on the

9

witness stand. This objection is irrelevant to the R&R's conclusions and is overruled.

4. **"Witnesses Needed and why Also my OBJECTION to the conclusion as a Whole"**

Finally, Rice's objections summarize alleged wrongful conduct[2] on the part of various defendants with regard to the rule violation reports. After setting forth this conduct, Rice states:

> Nobody told the court … to go after Ms. Orr[;] she was merely in expla[]nation of why things happened …. I didn't plan to go after "Orr[,]" the judge did …. If they want to expose Mr. Orr they will, if not, they'll take responsibility of the wrong that has been done to me. That's my strategy, where [the Magistrate Judge] has taken my case isn't nowhere close to the way it is. Need[s] to be corrected "<u>fast.</u>"

Doc. #22 at 12 (emphasis in original).

Rice's "plan" has no bearing on whether he can state a claim against the dismissed defendants. Accordingly, to the extent this objection challenges the dismissal of the various defendants, the objection is overruled. To the extent Rice wishes to dismiss Orr, he may do so by stipulation.

### B. Second Document ("Amending Pleadings")

Rice's second document purports to be an "Amend[ed] Pleadings," however, Rice did not seek leave to amend and may not amend as a matter of course. *See* Fed. R. Civ. P. 15(a). Accordingly, the amendment has no effect.

---

[2] Rice alleges that Williams conducted the disciplinary hearing, found him not guilty, changed her findings when Orr and Wren ordered her to, and urged Rice to appeal the findings because of procedural irregularities. He testified at his *Spears* hearing, however, that "she did nothing wrong," but also, in contradiction, that he wanted her to be a defendant.

Rice also alleges that Superintendent Lee and Warden Stanciel failed to perform a thorough investigation into the eight Rule Violation Reports, thus thwarting Rice's attempts to have them overturned. He acknowledges, though, that neither Lee nor Stanciel knew enough facts about the matter to make a reasoned decision.

Against Warden Flagg, Rice alleges that she learned of the eight Rule Violation Reports during her review of the grievance process, took no action to correct them, and passed incomplete information to Superintendent Lee and Warden Stanciel during the review process.

Rice alleges that Case Manager Ms. Washington assisted Orr, whom he does not wish to be a defendant.

According to Rice, Legal Claims Adjudicator David Petrie should have intervened regarding the Rule Violation Reports during the review process but failed to do so.

Rice alleges that Thelma Thompson witnessed the actions of Orr, and needs to testify to "let her name be straightened out" because she did not know that Orr "used her" to accomplish her own ends.

10

The document also contains a letter to Judge Virden challenging her decision to deny Rice's motion to appoint counsel. Because there was no error in this decision, the objection is overruled.

### C. Third Document ("My Report and Recommendation")

Rice's third document raises six arguments in response to the Report and Recommendation. The first states:

> this cause is not Marcho Sanchez Rice –vs- Lt. Clarissa Williams, ET Al. and all the rest of the witnesses that's on the witness list. This cause is Lt. Clarissa Williams, ET AL. and all the witnesses on the witness list – vs - Lt. Clarissa Williams, ET AL. and all the rest of the witnesses on the witness list.
>
> So you, the Judge, and your attorney's can stop acting like it's a tug of war against me (Marco S. Rice) you all know my evidence is the defendant's documents of wrong doing.

Doc. #29 at 1. Although it is less than clear, it appears Rice states either a challenge to the caption of this case or an argument regarding the evidence supporting his claims. Under either formulation, the objection is overruled.

Rice also objects to the Magistrate Judge's decision not to appoint him counsel to represent him in this case. The Court has reviewed the Magistrate Judge's decision denying appointed counsel and has found no error in law or fact. Accordingly the objection will be overruled.

Third, he objects, generally, because the Magistrate Judge did not separately address his claim for failure to protect him from the attack of other inmates, though, over the course of a year, he was never actually attacked. This objection is overruled because, for the reasons above, the Court concludes that Rice has not stated a claim for failure to protect.

Rice's remaining arguments relate to his desire to call various persons as witnesses at a hearing. These arguments have no bearing on the Report and Recommendation and are, therefore, overruled.

# IV
# Conclusion

In sum, the Magistrate Judge's Report and Recommendation (proposing dismissal of all claims and defendants, except the retaliation claim against Orr) will be **ADOPTED** as the opinion of the Court.

**SO ORDERED**, this 13th day of October, 2016.

        **/s/ Debra M. Brown**
        **UNITED STATES DISTRICT JUDGE**